IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Charles Edward Gamble, | ) | C/A No. 0:19-1187-PJG |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| Andrew Saul, Commissioner of Social Security,[1] | ) ) ) ) | |
| Defendant. | ) ) | |

  This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review.  The plaintiff, Charles Edward Gamble, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB").  Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

  Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as the named defendant because he became the Commissioner of Social Security on June 17, 2019.

§ 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

**ADMINISTRATIVE PROCEEDINGS**

In January 2017, Gamble applied for DIB, alleging disability beginning February 1, 2017. Gamble's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. A video hearing was held on December 21, 2017, at which Gamble appeared and testified and was represented by Christi B. McDaniel, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on January 10, 2018 finding that Gamble was not disabled from February 1, 2017 through the date of the decision. (Tr. 181-91.) The Appeals Council granted Gamble's request for review and issued an order on March 23, 2018 vacating the hearing decision and remanding the case for further proceedings. (Tr. 197-99.) The Appeals Council instructed the ALJ to resolve the following issues:

- The hearing decision does not identify or discuss the claimant's Veterans Affairs rating or the claimant's individual unemployability finding by the Department of Veterans Affairs (Exhibit 2D, page 2). The claimant was given a 90% service-connected disability rating with rated disabilities including post-traumatic stress disorder (70%), lumbosacral or cervical strain (40%), irritable colon (30%), flat foot condition (10%), thigh muscle injury (10%), and paralysis of sciatic nerve (0%). The Administrative Law Judge did not address and weigh this opinion by another governmental agency (20 CFR 404.1527(f)). Consideration of the claimant's Veterans Affairs rating and unemployability finding is warranted.

- The Administrative Law Judge received but did not exhibit medical evidence from the William Jennings Bryan Dorn Veterans Affairs Medical Center, dated February 19, 2015 to November 6, 2017 (186 pages) and medical evidence from Pee Dee Orthopaedic Associates, dated March 28, 2016 to November 8, 2016 (8 pages). This evidence was received prior to the hearing and constituted the majority of the medical evidence but it was neither exhibited nor adequately addressed. This evidence included treatment notes through November 2017 as well as several medical opinions from 2015, including opinions that the claimant's back impairment limits his ability to do manual labor and his irritable bowel syndrome affects the claimant's ability to work because he has to go back and forth to the bathroom (Veterans Affairs Medical Center, pages 94 and 102). Exhibition and consideration of this medical evidence is warranted.

- The Administrative Law Judge did not determine whether obesity constitutes a severe impairment. As of April 13, 2017, the claimant weighed 213 pounds at a report[ed] height of 5'6" inches yielding a Body Mass Index (BMI) of 34.4 (Exhibit 2F, page 26; Exhibit 4E,

page 2). The clinical guidelines issued by the National Institute of Health define obesity as present in general where there is a BMI of 30.0 or above. As provided by Social Security Ruling 02-01p, when obesity is a severe impairment, an assessment should be made of the effect it has upon an individual's ability to perform routine movement and necessary physical activity within the work environment. Additionally, the combined effect of obesity with other impairments, such as the claimant's lumbosacral strain and left ankle impairment, may be greater than might be expected without obesity, and must be considered. Consideration of the claimant's obesity is warranted.

(Tr. 197-98.) The Appeals Council also directed the ALJ as follows:

- Exhibit and address the medical evidence from the William Jennings Bryan Dorn Veterans Affairs Medical Center, dated February 19, 2015 to November 6, 2017 (186 pages) and medical evidence from Pee Dee Orthopaedic Associates, dated March 28, 2016 to November 8, 2016 (8 pages). Ensure in accordance with HALLEX I-2-1-20 that all the relevant evidence and documents are clearly identified as part of the record.

- Obtain additional evidence concerning the claimant's physical impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). The additional evidence may include, if warranted and available, a physical consultative examination and medical source opinions about what the claimant can still do despite the impairment(s).

- Further evaluate the claimant's medically determinable impairments including obesity to determine to what extent they limit the claimant's ability to perform basic work activities (Social Security Ruling 02-1 p).

- Consider and weigh the claimant's Veterans Affairs 90% disability rating and unemployability finding.

(Tr. 198.) A second hearing was held on October 16, 2018, at which Gamble appeared and testified and was represented by Christi McDaniel, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on November 30, 2018 finding that Gamble was not disabled from February 1, 2017, through the date of the decision. (Tr. 15-27.)

Gamble was born in 1956 and was sixty years old on his disability onset date. He has a high school education and past relevant work experience as an assistant for a blood collection mobile unit, and a rail cargo track operator at an industrial plant. (Tr. 392.) Gamble alleged

disability due to glaucoma and right eye blindness; PTSD; irritable bowel syndrome; an enlarged prostate; and left leg and foot issues. (Tr. 391.)

In applying the five-step sequential process, the ALJ found that Gamble had not engaged in substantial gainful activity since his alleged onset date of February 1, 2017. The ALJ also determined that Gamble's right-sided open angle glaucoma; left-sided ocular hypertension; bilateral cataracts; degenerative disc disease of the lumbar spine; obesity; alcohol abuse disorder; PTSD; depression; and anxiety were severe impairments. However, the ALJ found that Gamble did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Gamble retained the residual functional capacity to

> perform medium work as defined in 20 CFR 404.1567(c), except he can frequently engage in pushing, pulling, and the operation of foot controls with his left lower extremity. He can occasionally climb ladders, ropes, or scaffolds and can frequently climb ramps and stairs. He can occasionally stoop, crouch, and crawl, and can frequently balance and kneel. The claimant cannot engage in commercial driving and must avoid all exposure to hazards such as unprotected heights or moving machinery. He remains capable of reading ordinary newspaper or book print, but cannot engage in fine detail work such as threading a needle. He is capable of simple, routine tasks consistent with a reasoning development level of 2 or less as defined in the Dictionary of Occupational Titles, in an environment free from production-rate pace, such as assembly line work. The claimant remains capable of occasional interaction with supervisors and co-workers, but can never interact with the public. He will be off-task for 5% of the workday, exclusive of regularly scheduled breaks.

(Tr. 20.) The ALJ found that Gamble was unable to perform any past relevant work, but that considering Gamble's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Gamble could perform. Accordingly, the ALJ found that Gamble was not disabled from February 1, 2017 through the date of the decision.

The Appeals Council denied Gamble's request for review on March 1, 2019, thereby making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUE

Gamble states that his issue on appeal is "whether or not the Commissioner erred in finding that the Plaintiff was not disabled." (Pl.'s Br. at 1, ECF No. 12 at 1.) Review of Gamble's brief suggests that the crux of Gamble's arguments is a challenge to the ALJ's residual functional capacity assessment.

## DISCUSSION[3]

A claimant's residual functional capacity ("RFC") is "the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016). The claimant bears the burden of producing evidence demonstrating how his impairments affected his functioning during the relevant time period. See 20 C.F.R. § 404.1512(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion

---

[3] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed *on or after* March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 404.1527. Because the instant claim was filed before that time, all references in the instant Order are to the prior versions of the regulations and SSRs in effect at the time Gamble's application for benefits was filed, unless otherwise specified.

to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning.").

Gamble first argues that the ALJ's finding that Gamble could perform a reduced range of medium work is unsupported by substantial evidence, asserting that he would be unable to perform the required standing, walking, and lifting. Medium work entails "lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (citing SSR 83-10, 1983 WL 31251, at *6); see also 20 C.F.R. § 404.1567(c). In support of his position, Gamble relies on his testimony concerning his limitations stemming from his back impairment. Gamble argues this testimony is inconsistent with the ability to perform medium work and further inconsistent with the ability to perform sustained work activities on a regular and continuing basis. (Pl.'s Br. at 26-27, ECF No. 12 at 26-27) (citing SSR 96-8p). However, the ALJ explicitly considered Gamble's testimony and found that Gamble's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence and other evidence of record. Gamble has failed to demonstrate, or even allege, that the ALJ's evaluation of his subjective complaints was unsupported by substantial evidence. Moreover, as fully argued and discussed by the Commissioner, Gamble has failed to otherwise demonstrate or argue that the ALJ's determination that Gamble could physically perform medium work was unsupported by substantial evidence. (Def.'s Br. at 15-17, ECF No. 14 at 15-17.)

Gamble also argues that the ALJ erred in giving little weight to the opinion evidence from Dr. Dieter Bartschat, Gamble's treating psychiatrist. The law applicable to Gamble's application

provides that regardless of the source, the Commissioner will evaluate every medical opinion received.  20 C.F.R. § 404.1527(c).  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See id.  However, "the rule does not require that the testimony be given controlling weight."  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Instead, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should also be considered.  20 C.F.R. § 404.1527(c)(6).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Id. (quoting Craig, 76 F.3d at 590).

With regard to Dr. Bartschat's opinion, the ALJ found as follows:

> The undersigned affords little weight to Dieter Bartschat, M.D., Ph.D., the claimant's mental health provider, who indicates the claimant's PTSD and related anxiety and depression limit his quality of life and lead to grossly inappropriate behavior, difficulty adapting to work or stress, poor impulse control, unprovoked irritability, panic attacks, difficulty with relationships, occupational and social impairment, depressed mood, impaired sleep, nightmares, and anxiety, which renders him unable to maintain employment. Ex. 1E/1. This is inconsistent with the claimant's treatment records noting improved symptoms, as well as the ability to deal with or not be bothered by his symptoms. Ex. 2F/30; 5F/15, 6F/6. Moreover, the claimant's generally unremarkable mental status exams, with intact thought process/content and impulse control, do not support Dr. Bartschat's opinions. Ex. 1F/18, 40; 2F/29-30; 4F/9-10, 23; 5F/21-22.

(Tr. 23.)  Here, Gamble challenges the ALJ's findings arguing that Dr. Bartschat's opinion was supported by the treatment notes.  Gamble directs the court to two treatment records in support of his argument.  Specifically, Gamble argues that on December 5, 2017 his mental health counselor, Alvin Coldtrain, observed that Gamble "had poor eye contact; he was dealing with anxiety and depression; had hallucinations; had inability to control his anger; was isolative; had decreased and hesitant verbalization; had a depressed, tearful, anxious, suspicious, irritable, agitated mood; had increased senses; and had poor concentration and poor memory," and that on December 22, 2017, Mr. Coldtrain found Gamble had fair judgment, poor to fair memory, and "continued to have classic symptoms of PTSD, with continued periods of isolation, insomnia/awakening, avoidance of anything that reminds of him of his time in Iraq, hopelessness, nightmares, emotional detachment, anger/irritability, loss of interest in people, places, and things, extreme startle response, hypervigilance, and some hallucinations."  (Pl.'s Br. at 28-29, ECF No. 12 at 28-29) (citing Tr. 774-77, 782-85).

      Upon thorough review of the ALJ's decision and the record, the court disagrees with Gamble's challenges to the ALJ's findings and concludes that it is clear that the ALJ applied the relevant factors in evaluating the opinion evidence.  Further, Gamble has failed to demonstrate that the ALJ's evaluation of these opinions is unsupported by substantial evidence or based on an incorrect application of the law.  See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to

give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted). Based on the regulations applicable to Gamble's application, the ALJ properly considered the nature and frequency of Dr. Bartschat's treatment relationship with Gamble as evidenced by the record and also considered Dr. Bartschat's specialty. See 20 C.F.R. § 404.1527(c). Moreover, the decision reflects that the ALJ offered reasonable bases in giving this opinion little weight. A review of the ALJ's decision as a whole reveals that the ALJ summarized and considered Gamble's medical records and reasonably found that the medical records undermined some of the limitations opined. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ considered Gamble's mental health records as a whole, summarizing them as follows:

> Mentally, the claimant is reportedly guarded, irritable and angry, avoidant and isolated, and has nightmares due to PTSD. Ex. 1F/17, 39; 2F/29. However, apart from some mood abnormalities, the claimant is cooperative, with no psychotic symptoms, appropriate thought process/content, and intact memory, concentration, impulse control, insight/judgment, and abstraction abilities. Ex. 1F/18, 40; 2F/29-30; 4F/9-10, 23. These unremarkable mental status exams are despite significant alcohol use, as the claimant reported drinking roughly a pint of liquor a day as of March 2017 and June 2017. Ex. 2F/29; 4F/23. Moreover, treatment notes indicate continued improvement with medication. Ex. 2F/30. A late 2017 exam notes poor memory and concentration, with a depressed, tearful, anxious, agitated, and irritable mood. Ex. 5F/38. However, this appears to be an outlier based on both prior and subsequent records. In 2018, the claimant denied any significant problems, stating he could "deal with" his present symptoms, and further denied nightmares, which was a change from previous reports of 2-3 nightmares per week. Ex. 5F/15, 20. It appears a medication change in early 2015 (switched from terazosin to prazosin) helped in this regard. Ex. 5F/26. While his switch was short-lived due to other side effects of prazosin (Ex. 5F/27), it appears the claimant's nightmares remained under control at later appointments. Ex. 5F/15. He does report ongoing sleep problems, but also notes improvements with his mood due to medication. Ex. 5F/19-20. Subsequently, the claimant reported well-controlled

> symptoms that he is "not bothered" by, which include occasional flashbacks and guardedness, and once-weekly nightmares. Ex. 6F/6. He also reported significant improvement in his alcohol consumption. Ex. 6F/6. Mental status exams continued to be unremarkable in 2018, with intact through process/content, cooperative behavior, no perceptual disturbances, intact cognition, and good insight/judgment. Ex. 5F/21-22; 6F/7-8. Current medications include venlafaxine, trazodone, and buspirone. Ex. 6F/9.

(Tr. 22.) Thus, in considering the mental health treatment notes as a whole, the ALJ considered Mr. Coldtrain's December 2017 treatment notes; however, he found this instance to be an outlier based on Gamble's other treatment records.

Based on the foregoing, Gamble has failed to demonstrate that the ALJ's decision to give little weight to Dr. Bartschat's opinion was unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly considered this opinion in accordance with the applicable factors and legal authority. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Thus, the court finds that Gamble has not shown that the ALJ's decision with regard to Dr. Bartschat's opinion was unsupported by substantial evidence or reached through application of an incorrect legal standard.

Thus, upon review of the record as a whole, the court finds that Gamble has not demonstrated that the ALJ's residual functional capacity analysis and finding are unsupported by substantial evidence or controlled by an error of law. Gamble's remaining arguments hinge on his contention that the ALJ erred in formulating his residual functional capacity; accordingly, the court finds these arguments to be unsupported.

**ORDER**

For the foregoing reasons, the court finds that Gamble has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

April 23, 2020                                          Paige J. Gossett
Columbia, South Carolina                    UNITED STATES MAGISTRATE JUDGE